OPINION *Page 2 
{¶ 1} Appellant, Lilies El-Badewi, appeals from the April 7, 2006 Judgment Entry of the Stark County Court of Common Pleas, Division of Domestic Relations, which granted a divorce to the parties. Appellee, Mounir El-Badewi, also filed a cross-appeal.
 STATEMENT OF THE FACTS AND CASE {¶ 2} The parties were married on February 28, 1989. There were four children born of the marriage: Yasmine (DOB 6/22/91), Natashia (DOB 11/18/94), Daria (DOB 7/6/96) and Dania (1/12/00).
 {¶ 3} Both parties have extensive educational and professional backgrounds. Appellant, a native of Indonesia, holds a bachelor's degree from Indiana University, and worked in international banking for several years in Jakarta, Indonesia. Appellee, a native of Lebanon, holds a bachelor's degree in mathematics, a master's degree in physical chemistry, a doctor of dentistry degree, a medical degree and is a certified anesthesiologist.
 {¶ 4} In 2000, the parties converted their former residence into the Cedar Family Dental Practice, located in Canton, Ohio. Appellant, while being the primary caregiver for the children, also assisted appellee in building the dentistry practice. She at times handled the books and banking for the business. She also drew a salary for her efforts. The business is the parties' sole source of income.
 {¶ 5} On March 22, 2005, appellee filed a Complaint for Divorce against appellant in the Stark County Court of Common Pleas Domestic Division. *Page 3 
 {¶ 6} On March 21, 2006, the matter came for final hearing. Five days prior to the trial, appellant received a business evaluation report from appellee's expert witness, the "415 Group", a certified public accounting and consulting firm.
 {¶ 7} At the time of the hearing, the parties had been married for over 17 years. The parties stipulated to living separate and apart for more than one year and that they are incompatible. On March 22, 2006, the second day of trial, appellant's counsel requested a continuance to get a separate business evaluation report to rebut appellee's report. The trial court denied the motion.
 {¶ 8} On April 7, 2006, the trial court issued a detailed 17-page Judgment Entry granting the divorce, dividing property and giving shared parenting orders.
 {¶ 9} It is from this judgment entry that appellant appeals raising the following Assignments of Error:
 ASSIGNMENTS OF ERROR {¶ 10} "I. THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO ALLOW DEFENDANT ADDITIONAL TIME TO REVIEW/RESPOND TO THE BUSINESS EVALUATION AS PROVIDED LESS THAN SEVEN (7) DAYS PRIOR TO TRIAL
 {¶ 11} "II. THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR WHEN IT ASSESSED THE VALUE OF THE PLAINTIFF'S BUSINESS.
 {¶ 12} "III. THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO CONSIDER AND ALLOCATE IN ITS *Page 4 
DIVISION OF ASSETS AND DEBTS [SIC] THE LOAN FROM DEFENDANT'S PARENTS TO THE PARTIES.
 {¶ 13} "IV. THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR WHEN IT MANDATED THAT DEFENDANT REIMBURSE PLAINTIFF FOR THE EXPENSE OF A CELL PHONE AS WELL AS THE COSTS OF EXPERTS.
 {¶ 14} "V. THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR WHEN IT MANDATED THE PARTIES FOLLOW A SHARED PARENTING PLAN WHEN SHARED PARENTING WAS NOT IN THE BEST INTEREST OF THE MINOR CHILDREN.
 {¶ 15} "VI. THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR WHEN IT ALLOCATED HOLIDAY COMPANIONSHIP TIME.
 {¶ 16} "VII. THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR WHEN IT CALCULATED PLAINTIFF'S INCOME FOR PURPOSES OF CHILD AND SPOUSAL SUPPORT.
 {¶ 17} "VIII. THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR WHEN IT SET THE AMOUNT AND DURATION OF SPOUSAL SUPPORT.
 {¶ 18} "XI. THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO ALLOW TESTIMONY OF HUSBAND'S INFIDELITY AS IT RELATED TO PARENTING."
 {¶ 19} Plaintiff-Appellee, also filed a cross-appeal raising the following assignment of error: *Page 5 
 {¶ 20} "I. THE TRIAL COURT ABUSED ITS DISCRETION IN ITS AWARD OF SPOUSAL SUPPORT, WHICH WAS UNREASONABLE IN AMOUNT AND DURATION."
 I. {¶ 21} In her first assignment of error, appellant argues that the trial court abused its discretion by failing to allow a continuance to obtain rebuttal expert testimony and/or allow additional time for appellant to review and respond to the 415 Group's expert report.
 {¶ 22} The decision on whether to grant a continuance is within the sound discretion of the trial court. Lamont v. Lamont, 11th Dist. No. 2005-G-2628, 2006-Ohio-6204. An abuse of discretion is more than an error of law or judgment, it implies that the trial court's reasoning was unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140.
 {¶ 23} At the beginning of the second day of trial, appellant requested a ten-day continuance to hire an expert to refute appellee's expert business valuation. T. at 146-147.
 {¶ 24} Appellant's counsel admitted he received appellee's expert business report five days prior to trial. T. at 146. A continuance was not requested prior to the start of the trial. Furthermore, there is no indication in the trial court record that appellant claimed any discovery violation on the part of the appellee in failing to produce the report earlier in the case.
 {¶ 25} This Court will not disturb the decision of the trial court on these facts. Accordingly, appellant's first assignment of error is overruled. *Page 6 
 II., III, IV. {¶ 26} Because appellant's second, third and fourth assignments of error are interrelated, we shall address them together. These assignments pertain to the division and valuation of marital property including debt.
 {¶ 27} A trial court enjoys broad discretion in fashioning an equitable division of marital property and in awarding spousal support. See Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 218, 481-482,450 N.E.2d 1140, 1141. To find an abuse of that discretion, the record must show more than an error of judgment on the trial court's part; the trial court's decision must be unreasonable, arbitrary, or unconscionable.Booth v. Booth (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028.
 {¶ 28} However, in determining a division of marital property, the trial court must consider and address the factors listed in R.C. §3105.171. Focke v. Focke (1992), 83 Ohio App .3d 552, 554,615 N.E.2d 327, 328; Layne v. Layne (1992), 83 Ohio App.3d 559, 562,615 N.E.2d 332, 333-334. Failure to consider these mandatory statutory factors is an abuse of discretion. See, e.g., Bisker v. Bisker (1994),69 Ohio St.3d 608, 609, 635 N.E.2d 308, 309. See, also, Kaechele v.Kaechele (1988), 35 Ohio St.3d 93, 96, 518 N.E.2d 1197, 1200-1201.
 {¶ 29} Further, in order for this Court to review the allocation of property between parties to a divorce and any support award, the "trial court must indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable and in accordance with the law." R.C. § 3105.171(G), supra;Kaechele, 35 Ohio St.3d at 93, paragraph two of the syllabus. See, also,Layne, 83 Ohio App.3d at 564. This includes assigning a value to the parties' major assets and debts, e.g. *Page 7 Raff v. Raff, Stark App. No. 2004CA00251, 2005-Ohio-3348. Although the trial court's division of property is reviewed under an abuse of discretion standard, factual determinations such the value of the property subject to division are reviewed under a manifest weight of the evidence standard. Brown v. Brown, Pike County App. No. 02CA689, 2003-Ohio-304. Under this deferential standard, the trial court's classification of property will not be reversed if it is supported by some competent, credible evidence. Barkley v. Barkley (1997),119 Ohio App.3d 155, 159, 694 N.E.2d 989.
 {¶ 30} Revised Code § 3105.171 states the following in part:
 {¶ 31} "(B) In divorce proceedings, the court shall, and in legal separation proceedings upon the request of either spouse, the court may, determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section. For purposes of this section, the court has jurisdiction over all property in which one or both spouses have an interest.
 {¶ 32} "(C)(1) Except as provided in this division or division (E) of this section, the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section* * *.
 {¶ 33} "(D) Except as otherwise provided in division (E) of this section or by another provision of this section, the court shall disburse a spouse's separate property *Page 8 
to that spouse. If a court does not disburse a spouse's separate property to that spouse, the court shall make written findings of fact that explain the factors that it considered in making its determination that the spouse's separate property should not be disbursed to that spouse.
 {¶ 34} "(E)(1) The court may make a distributive award to facilitate, effectuate, or supplement a division of marital property.
 {¶ 35} "(2) The court may make a distributive award in lieu of a division of marital property in order to achieve equity between the spouses, if the court determines that a division of the marital property in kind or in money would be impractical or burdensome.* * *.
 {¶ 36} "(F) In making a division of marital property and in determining whether to make and the amount of any distributive award under this section, the court shall consider all of the following factors:
 {¶ 37} "(1) The duration of the marriage;
 {¶ 38} "(2) The assets and liabilities of the spouses;
 {¶ 39} "(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
 {¶ 40} "(4) The liquidity of the property to be distributed;
 {¶ 41} "(5) The economic desirability of retaining intact an asset or an interest in an asset;
 {¶ 42} "(6) The tax consequences of the property division upon the respective awards to be made to each spouse; *Page 9 
 {¶ 43} "(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;
 {¶ 44} "(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;
 {¶ 45} "(9) Any other factor that the court expressly finds to be relevant and equitable* * *.
 {¶ 46} "(G) In any order for the division or disbursement of property or a distributive award made pursuant to this section, the court shall make written findings of fact that support the determination that the marital property has been equitably divided and shall specify the dates it used in determining the meaning of `during the marriage'."
 {¶ 47} Appellant argues in her second assignment of error that the trial court abused its discretion in assessing the value of the business. We disagree.
 {¶ 48} The trial court thoughtfully considered the expert valuation of the 415 Group. The trial court, via its Judgment Entry, laid out the factors it considered in assessing a value with specificity. The analysis was thorough, and the trial court acknowledged appellant disagreed with the valuation. This Court finds the trial court's decision to be supported by competent and credible evidence. Accordingly, appellant's second assignment of error is overruled.
 {¶ 49} In appellant's third assignment of error, she attempts to argue that the trial court abused its discretion in allocating money the couple received from her parents as a gift to the couple versus a loan or gift solely to appellant. We disagree.
 {¶ 50} Marital property is defined as "all real and personal property that is currently owned by either or both spouses. . . that was acquired by either or both of the *Page 10 
spouses during the marriage." R.C. § 3105.171(A)(3)(a)(i). However, marital property does not include any separate property, which includes "[a]ny gift of. . . personal property. . . that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse." R.C. § 3105.171(A)(6)(a)(vii).
 {¶ 51} Neither party disputes receiving funds from appellant's parents during the marriage. The issue is whether the trial court's classification of the money as a gift from appellant's parents to the marital couple was supported by competent and credible evidence. See,Heyman v. Heyman, 10th Dist. No. 05AP-475, 2006-Ohio 1345, Barkley v. Barkley (1997), 119 Ohio App.3d 155, 694 N.E.2d 989. Generally, a trial court's division of property lies soundly within its broad discretion and will not be overturned absent an abuse of that discretion. Cherry v. Cherry (1981), 66 Ohio St.2d 348, 421 N.E.2d 1293, paragraph two of the syllabus. However, a trial court's characterization of property, whether separate versus marital or loan versus gift, is reviewed under a manifest weight of the evidence standard. Garish v.Garish (Mar. 10, 1998), Franklin App. No. 97APF06-813, citing James v.James (1995), 101 Ohio App.3d 668, 684, 656 N.E.2d 399. Under this deferential standard, the trial court's classification of property will not be reversed if it is supported by some competent, credible evidence.Barkley v. Barkley (1997), 119 Ohio App.3d 155, 159, 694 N.E.2d 989.
 {¶ 52} The trial court stated in its Judgment Entry that it was appellant's burden to "show by clear and convincing evidence that it was a gift to her alone and not to both as a married couple." After a review of the entire record, this Court finds that the only evidence presented was appellant's testimony that she approached her parents for a *Page 11 
"loan". T. at 20-22. Further, appellant was unable to produce any documentation of the transfer or "loan" or that the money was intended as a gift only to appellant. Id.
 {¶ 53} We find the trial court was correct in concluding there was insufficient evidence to show by clear and convincing evidence that the money received by the couple from her parents was a loan or gifted solely to appellant.
 {¶ 54} Accordingly, appellant's third assignment of error is overruled.
 {¶ 55} In appellant's fourth assignment of error, she argues that the trial court erred when it mandated she reimburse appellee for her cell phone bill and costs of experts.
 {¶ 56} There is no dispute that appellant was ordered to pay her cell phone bill in the Magistrate's Order dated September 8, 2005. Appellant did not pay the bill, so appellee paid the bill out of the business account. This Court does not find that the trial court abused its discretion in enforcing its own temporary order.
 {¶ 57} The trial court also ordered appellant to pay half of the litigation expenses for experts. The trial court was well within its discretion to order this division of costs, based upon the complexity of this case and the extent of the overall property division. Accordingly, appellant's fourth assignment of error is overruled.
 V. VI. {¶ 58} Appellant's fifth and sixth assignments of error are interrelated and will be dealt with together. Appellant argues in her fifth assignment of error that the trial court abused its discretion when it mandated a shared parenting plan. In her sixth assignment of error, she also argues the trial court erred when it allocated holiday time. *Page 12 
 {¶ 59} Appellate courts review trial court's decisions allocating parental rights and responsibilities under an abuse of discretion standard. Miller v. Miller (1988), 37 Ohio St.3d 71,74, 523 N.E.2d 846. An abuse of discretion is when the trial court's judgment is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 450 N.E.2d 1140.
 {¶ 60} Revised Code § 3109.04 states the statutory factors and requirements concerning allocation of parental rights and responsibilities. Parental rights and responsibilities are to be allocated based upon the best interest of the child. Braatz v.Braatz (1999), 85 Ohio St.3d 40, 43, 706 N.E.2d 1218.
 {¶ 61} Revised Code § 3109.04(F) provides factors to be considered in making that determination:
 {¶ 62} "In determining the best interest of a child pursuant to this section, * * *, the court shall consider all relevant factors, including, but not limited to: (a) The wishes of the child's parents regarding the child's care; (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court; (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest; (d) The child's adjustment to the child's home, school, and community; (e) The mental and physical health of all persons involved in the situation; (f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights; * * * (i) Whether the residential parent or one of the parents subject to a shared parenting decree has *Page 13 
continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court; (j) Whether either parent has established a residence, or is planning to establish a residence, outside this State."
 {¶ 63} The trial court went through each of these factors laboriously and then proceeded to the additional factors found in R.C. §3109.04(F)(2):
 {¶ 64} "In determining whether shared parenting is in the best interest of the children, the court shall consider all relevant factors, including, but not limited to, the factors enumerated in division (F)(1) of this section, the factors enumerated in section 3119.23 of the Revised Code, and all of the following factors:
 {¶ 65} "(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;
 {¶ 66} "(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;
 {¶ 67} "(c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;
 {¶ 68} "(d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;
 {¶ 69} "(e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem."
 {¶ 70} Appellant argues that because the parties have problems communicating, she should have sole custody. The trial court considered all of the above factors and noted there was a communication problem but "there are other factors at play." Judgment Entry dated April 7, 2006. *Page 14 
 {¶ 71} The trial court relied heavily on the reports of the guardian ad litem and the psychologist as well as the in-camera interview of the children to determine shared parenting was necessary. This Court will give the trial court wide latitude on the consideration of this evidence. Davis v. Flickinger, 77 Ohio St.3d 415, 418, 1997-Ohio-260. Accordingly, the fifth assignment of error is overruled.
 {¶ 72} Appellant's sixth assignment of error follows the same best-interest analysis as it relates to the allocation holiday companionship time. Appellant is Christian and Appellee is Islamic. The trial court directed the parties follow Schedule A in regards to holidays and days of special meaning. In addition, the trial court stated that "Father is to have time with children during major Islamic holidays and the parties are to cooperate to insure their attendance at the Mosque when appropriate". Appellant argues that this is vague because the trial court did not define "major Islamic holidays" or the set amount of time Father is to have spent with children at these holidays. However, the parties have been directly involved in the children's Islamic upbringing and it should not be confusing to them to determine what is a major Islamic holiday, as well as the appropriate amount of time to be spend with appellant. Due to the very busy lives of the children and the parties, we do not find the trial court abused its' discretion in allocating flexible parenting time in regards to religious activities.
 {¶ 73} Accordingly, appellant's sixth assignment of error is overruled.
 VII. {¶ 74} In her seventh assignment of error, appellant argues the trial court erred in its calculation of appellee's income for purposes of child and spousal support. *Page 15 
 {¶ 75} Appellant alleges that the trial court should have added the income she was previously earning from the business but would no longer be earning due to the divorce (approximately $36,000); tax saving considerations (approximately $54,000) and "flow through income" (approximately $45,000). We disagree.
 {¶ 76} The trial court was thoughtful and thorough in its explanation of appellee's income valuation. The trial court noted that appellee's income was $191,169. This included "$45,219 of pass-through income from his corporation." Judgment Entry at 8.
 {¶ 77} The trial court further noted:
 {¶ 78} "Indications are that all things will not be equal next year. The business evaluator noted prospective changes in Medicaid rules will eliminate approximately $234,000 or 35% of 2005 gross revenue. It remains to be seen whether Father can adjust his practice to recover that much revenue." Id. The trial court used the same evaluation process in calculating child support. We cannot the trial court abused its discretion in calculating the appellant's income due to the impact of the new Medicaid rules which will significantly impact future income for the dentistry practice.
 {¶ 79} In addition, the trial court retained jurisdiction over the support order, so the parties can seek modification of the order in future due to a change in circumstances. Accordingly, assignment of error seven is overruled.
 VIII. and Plaintiff-Appellee's Cross Appeal I. {¶ 80} Next, appellant and appellee argue that the trial court erred in setting the amount and duration of spousal support.
 {¶ 81} As previously stated, a trial court enjoys broad discretion in awarding spousal support. See Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 218, 481-482, *Page 16 450 N.E.2d 1140, 1141. To find an abuse of that discretion, the record must show more than an error of judgment on the trial court's part; the trial court's decision must be unreasonable, arbitrary, or unconscionable. Booth v. Booth (1989), 44 Ohio St.3d 142, 144,541 N.E.2d 1028.
 {¶ 82} The trial court considered the factors of R.C. § 3105.18(C)(1):
 {¶ 83} "(C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
 {¶ 84} "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
 {¶ 85} "(b) The relative earning abilities of the parties;
 {¶ 86} "(c) The ages and the physical, mental, and emotional conditions of the parties;
 {¶ 87} "(d) The retirement benefits of the parties;
 {¶ 88} "(e) The duration of the marriage;
 {¶ 89} "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 {¶ 90} "(g) The standard of living of the parties established during the marriage;
 {¶ 91} "(h) The relative extent of education of the parties; *Page 17 
 {¶ 92} "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 {¶ 93} "(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 {¶ 94} "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 {¶ 95} "(l) The tax consequences, for each party, of an award of spousal support;
 {¶ 96} "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 {¶ 97} "(n) Any other factor that the court expressly finds to be relevant and equitable."
 {¶ 98} The trial court considered each of these factors and enumerated each one in its decision. Appellant argues that the trial court's decision was flawed because Appellant cannot return to work without disrupting the children's busy school and extracurricular activities. Subsection (f) was just one consideration in the trial court's decision. The trial court clearly considered and weighed all of the factors. The trial court also considered that appellant could eventually work part-time in order to re-enter the workforce, while still participating fully in her children's lives. Accordingly, this Court does not find the trial court's decision to be unreasonable, arbitrary, or unconscionable.
 {¶ 99} Appellant's eighth assignment of error is overruled. *Page 18 
 {¶ 100} In the same vein, appellee cross-appealed on this issue arguing that the spousal support was unreasonable in amount and duration. Again, this Court finds the trial court thoughtfully considered and weighed all factors of the statute, and incorporated its findings in a well-written decision.
 {¶ 101} Based on the same analysis as above, the cross-appeal is overruled.
 IX. {¶ 102} In her final assignment of error, appellant argues that the trial court improperly excluded evidence of appellee's infidelity as it related to parenting.
 {¶ 103} The admission or exclusion of evidence rests in the sound discretion of the trial court. O'Brien v. O'Brien, 5th
Dist. No. 1003CAF10269, 2004-Ohio-5881, citing State v. Sage (1987),31 Ohio St.3d 173, 180, 510 N.E.2d 343. An appeals court should look at the totality of circumstances and determine whether the trial court acted unreasonably, arbitrarily or unconscionably in allowing or excluding disputed evidence. Id.
 {¶ 104} The trial court would not allow in testimony of appellee's infidelity as it applied to his decision making. T. at 238. However, the trial court acknowledged that appellee's solicitation charge was detailed in the report of the guardian ad litem. T. at 304. Further, there was some testimony as to this charge as it applied to the renewal of his dental license. T. at 349-351.
 {¶ 105} The trial court did not abuse its discretion in excluding this testimony. However, it should be noted that the testimony came in for another purpose later in the trial. The trial court was aware of the charge and was entitled to give this information the appropriate weight in rendering its judgment. *Page 19 
 {¶ 106} Accordingly, appellant's final assignment of error is overruled.
 {¶ 107} The decision of the Stark County Court of Common Pleas, Division of Domestic Relations, is affirmed.
Delaney, J. Hoffman, P.J. and Wise, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas, Domestic Relations Division, is affirmed. Costs assessed to appellant. *Page 1